PROFESSIONAL SERVICES AGREEMENT
Flat Fee Emergency Call Coverage Services (HCA-524 6/2015 v37)
CONTRACT KEND-95074, SUPPLEMENT 1

This Professional Services Agreement ("Agreement") is entered into between Kendall Healthcare Group, Ltd. d/b/a Kendall Regional Medical Center ("Facility") and Miami Neurological Institute, LLC ("Contractor").

As used in this Agreement, "Contractor" shall mean (i) an individual physician licensed to practice medicine in the State in which the Facility is located, or (ii) a partnership, professional service corporation or association duly organized and validly existing under the laws of the State in which the Facility is located, and authorized to practice medicine through its designated Contractor's Representatives. "Contractor's Representatives" shall mean all of Contractor's employees, shareholders, partners and agents providing services under this Agreement.

Facility is an acute care hospital with an Emergency Department that is open 24/7. Facility desires for Contractor to provide, and Contractor agrees to provide, professional medical care to Facility's Emergency Department patients on a 24/7 on-call basis ("Services") in the specialty of Neurological Surgery.

Supplement 1: The parties entered into Supplement 0 of this Agreement, effective August 14, 2015 and now wish to enter into Supplement 1, effective October 1, 2015, to clarify the maximum allowable compensation, as set forth in Section 1A. There are no other changes to this agreement.

Therefore, in exchange for valuable consideration, the receipt and sufficiency of which is acknowledged, the parties agree as follows:

1. **Compensation and Contractor's General Obligations**

   A. Facility will pay Contractor $1,450.00 per ( _X_ 24 hour; ___ 12 hour; ___ hourly; or other - specify: _____ ) shift, up to a maximum of $530,700.00 per year and in accordance with the attached Indigent Care Addendum. Contractor will provide Emergency Department call coverage in accordance with Facility's Bylaws, Rules and Regulations and Policies and Procedures and in accordance with the call schedule maintained by the Facility. Contractor will bill and collect independently for his/her professional services to patients.

   B. Contractor will be a member in good standing of Facility's Medical Staff. Contractor will comply with Facility's bylaws, rules and regulations, and policies and procedures, to the extent they do not conflict with the terms of this Agreement.

   C. Contractor agrees to apply or reapply for medical staff privileges at Facility through Facility's Credentialing Online website where available.

   D. Contractor will maintain time records for each month verifying the amount of time spent performing the Services and will submit those records as a condition precedent to Facility's payment obligation. Time records should be due and submitted to Facility on or before the 30th day following the close of the month to which the records refer. Records submitted more than 60 days following the end of the month may or may not be paid at the sole discretion of the Facility. Contractor will maintain time records for at least 4 years after the end of the cost-reporting period to which the allocation applies. As a condition of payment for Services provided pursuant to this Agreement, Contractor must be current and in compliance with all medical record completion requirements.

   E. Contractor will perform Services in accordance with all regulatory and accreditation standards applicable to Facility and the Service, including the requirements imposed by The Joint Commission, the Medicare/Medicaid conditions of participation, and all applicable federal, state and local laws, rules, regulations and policies.

   F. Upon the written request of the Secretary of Health and Human Services, the Comptroller General or their authorized representatives, Contractor will make available those records necessary to verify the costs of providing Services. The inspection will be available for up to 4 years after the Services are rendered. If Contractor is requested to disclose records pursuant to this Section for any purpose, Contractor will notify Facility of the nature and scope of the request, and Contractor will make available, upon written request of Facility, all requested records. Contractor will indemnify Facility if any amount of reimbursement is denied or disallowed because of Contractor's failure to comply with the obligations in this Section. That indemnity will include the amount of reimbursement denied, plus any interest, penalties and legal costs. This section is included pursuant to and is governed by the requirements to 42 USC § 1395x(v)(1) and its regulations. No attorney-client, accountant-client, or other legal privilege will be deemed to have been waived by Facility or Contractor by virtue of this Agreement.

Exh. A

G. Contractor acknowledges that many Providers are "**covered entities**" as that term is defined at 45 C.F.R. §160.103. Contractor agrees to comply with the Health Information Technology for Economic and Clinical Health Act of 2009 (the "HITECH Act"), the Administrative Simplification Provisions of the Health Insurance Portability and Accountability Act of 1996, as codified at 42 U.S.C.A. §1320d *et seq.* ("**HIPAA**") and any current and future regulations promulgated under the HITECH Act or HIPAA, including without limitation the federal privacy regulations contained in 45 C.F.R. Parts 160 and 164 (the "**Federal Privacy Regulations**"), the federal security standards contained in 45 C.F.R. Parts 160, 162 and 164 (the "**Federal Security Regulations**"), and the federal standards for electronic transactions contained in 45 C.F.R. Parts 160 and 162 (the "**Federal Electronic Transaction Regulations**"), all as amended from time to time and collectively referred to herein as the "**HIPAA Requirements**". Contractor agrees not to use or further disclose any "Protected Health Information," including "Electronic Protected Health Information," (as such terms are defined in the HIPAA Requirements) other than as permitted by the HIPAA Requirements and the terms of this Agreement. Contractor will make its internal practices, books, and records relating to the use and disclosure of Protected Health Information available to the Secretary of Health and Human Services to the extent required for determining compliance with the HIPAA Requirements.

H. Contractor will not employ or contract with any individual or entity who is excluded from participation in Medicare or any federal health care program under section 1128 and 1128A of the Social Security Act or as defined at 42 U.S.C. section 1320a-7b(f). Contractor is not excluded from participation in any federal health care program as defined at 42 U.S.C. section 1320a-7b(f). Contractor will notify Facility immediately if Contractor is excluded from participating under Medicare or any other governmental program at which time Facility will have the right to immediately terminate this Agreement.

I. It is Contractor's policy to provide equal opportunity to persons regardless of race, religion, age, gender, and disability or other classification within federal, state and local statutes, regulations or ordinances.

2. **Change of Circumstances**

   If the parties, acting in good faith, are unable to make the amendments Facility believes are necessary to comply with any government action, or, alternatively, if either party determines in good faith that compliance with the government action is impossible or infeasible, this Agreement will terminate 10 calendar days after one party notifies the other.

3. **Term and Termination**

   A. This Agreement will be effective as of August 14, 2015 ("Effective Date"). Unless sooner terminated, this Agreement will expire as of the end of business on August 31, 2017.

   B. Either party may terminate this Agreement, without cause, by providing not less than sixty (60) days written notice stating the intended date of termination. But if this Agreement is terminated pursuant to this section during the one-year period following the Effective Date, the parties will not enter into a new agreement with each other for the same or similar services until that one-year period has lapsed.

   C. Facility may terminate this Agreement immediately upon the following events:

   i. Upon Facility's loss of certification as a Medicare provider;

   ii. Upon the closure of Facility;

   iii. Upon the death or permanent disability of Contractor; or bankruptcy or under similar laws for the protection of debtors, or upon the initiation of such proceedings against Contractor if the same are not dismissed within 45 days of service; or

   iv. Upon the suspension, revocation, limitation or voluntary relinquishment of Contractor's or the sole Contractor's Representative's license(s) and/or privileges required to perform the services contemplated by this Agreement; or

   v. Upon Contractor's exclusion from any federal healthcare program.

4. **Insurance and Indemnification**

   A. Each party specifically reserves any common law right of indemnity and/or contribution which either party may have against the other.

   B. The parties will indemnify one another against: (i) any liability arising out of the other party's failure to comply with the terms of this Agreement, and any damages arising from the negligent acts or omissions of the party relating to this Agreement; and (ii) all costs and expenses, including reasonable legal expenses, incurred in connection with the defense of those claims.

C. The parties recognize the importance of cooperating with each other in good faith when legal or risk management issues arise, as long as this cooperation does not violate any law, cause the breach of any insurance policies or self-insurance programs, or compromise the confidentiality of information regarding the issues. The parties will cooperate in good faith, using their best efforts, to address any risk management and claims handling issues in a manner that strongly encourages full cooperation between the parties. If a controversy, dispute, claim, action or lawsuit (each, an "Action") arises with a third party and both the parties are included as defendants, each party will promptly disclose to the other party in writing the existence and continuing status of the Action and any negotiations relating to it. Each party will make every attempt to include the other party in any settlement offer or negotiations. If the other party is not included in the settlement, the settling party will immediately disclose to the other party in writing the acceptance of any settlement and terms.

D. Contractor will maintain professional liability insurance in a form reasonably acceptable to Facility in amounts required by Facility's Medical Staff Bylaws.

E. Insurance Coverage under the "Doctorless Patient Program". To address the malpractice insurance crisis in the State of Florida and assure the continuation of quality services to Facility's patients, the Facility has arranged to offer certain malpractice coverage (the "Doctorless Patient Program") to those eligible physicians that agree to accept the requirements set forth below. To be eligible, a physician must: (i) maintain continuous membership in the medical staff of the Facility in good standing; (ii) agree to provide emergency department on call and/or inpatient consult services to patients of the Facility; and (iii) execute a separate "MEDICAL STAFF PHYSICIAN EMERGENCY DEPARTMENT ON CALL AND/OR INPATIENT CONSULT PHYSICIANS MALPRACTICE INSURANCE COVERAGE AGREEMENT – FL" with Facility. In return, the Facility will provide professional liability insurance in the amounts of $250,000 per claim, $750,000 in the annual aggregate to Contractor for services provided to patients without a physician of choice if Contractor is called in to provide emergency services because Contractor is listed on the Facility's on call physician roster, and/or consult services because Contractor is called in to the Facility.

5. **Miscellaneous Provisions**

A. Notice. Any notice given under this Agreement will be deemed given upon the earlier of (i) actual delivery; or (ii) the third business day after deposit in the United States mail, postage prepaid, certified or registered mail, returned receipt requested. Any notice will be delivered to the respective addresses below, or to another address as a party requests in writing. The respective addresses are:

If to Facility:

Scott Cihak
Kendall Regional Medical Center
11750 Bird Road
Miami, Florida 33175

With Copy to:

Legal Department
P O Box 550
Nashville TN 37202-0550

If to Contractor:

Miami Neurological Institute, LLC
21097 NE 27th Court, Suite 540
Aventura, FL 33180

B. Entire Agreement. This Agreement contains the entire agreement of the parties and supersedes all prior agreements between the parties relating to this subject matter. This Agreement may be executed in one or more counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument. No other understanding regarding the same Services will be binding on the parties unless it is in writing and signed by both parties.

C. Independent Contractor. Contractor is performing services and duties under this Agreement as an Independent contractor and not as an employee, agent, partner of, or joint venture with Facility. Facility does retain responsibility for the performance of Contractor to the extent required by law and the accreditation standards applicable to Facility. This responsibility is limited to establishing the goals and objectives for the Service and requiring services to be rendered in a competent, efficient and

satisfactory manner in accordance with applicable standards and legal requirements. Contractor will at all times comply with the protocols, bylaws, guidelines, policies and rules applicable to other members of Facility's medical staff.

D. Practice of Medicine. Facility is neither authorized nor qualified to engage in any activity that may be construed or deemed to constitute the practice of medicine. Facility will neither have nor exercise any control or direction over Contractor's medical judgment or the methods by which Contractor performs Services. To the extent that any act or service required of, or reserved to, Facility in this Agreement is construed or deemed to constitute the practice of medicine, the performance of such act or service by Facility will be deemed waived or unenforceable.

E. Form 1099. If required to do so under applicable law, Facility will issue an Internal Revenue Service Form 1099 to Contractor for the performance of Services under this Agreement.

F. Regulatory Requirements. Nothing in this Agreement shall be construed to require Contractor or Contractor's Representatives to admit patients to Facility or the facility of any other Affiliate or to utilize Facility or any other Affiliate to provide inpatient, outpatient or other services to patients or otherwise generate business for Facility or any other Affiliate. Notwithstanding the unanticipated effect of any of the provisions herein, the parties intend to comply with 42 U.S.C. § 1320a-7b(b) (commonly known as the Anti-Kickback Statute), 42 U.S.C. § 1395nn (commonly known as the Stark law), and any other federal or state law provision governing fraud and abuse or self-referrals under the Medicare or Medicaid programs, as such provisions may be amended from time to time. The parties further intend that this Agreement comply with: (i) as many as reasonably practicable of the conditions for meeting the personal services and management contract safe harbor to the Anti-Kickback Statute which is set forth in 42 C.F.R. 1001.952(d); and (ii) all of the requirements for meeting the personal services arrangement exception to the Stark law, 42 U.S.C. § 1395nn(e)(3) as interpreted in Final Regulation § 411.357(d), 69 F.R. 16053, 16138-39, as such regulations may be amended. This Agreement shall be construed in a manner consistent with compliance with such statutes and regulations, and the parties hereto agree to take such actions necessary to construe and administer this Agreement therewith. The parties solely intend the fees paid to Contractor compensate Contractor for the provision of such services, and not influence Contractor or Contractor's Representatives with regard to any referrals of patients to Facility or any other Affiliate. As such, the parties acknowledge that the compensation paid to Contractor hereunder would be the same whether or not any such referrals are made. The parties further intend that the compensation paid hereunder shall be fair market value for the services rendered based on arm's length bargaining and the value of similar services in the community. In the event any court or administrative agency of competent jurisdiction determines this Agreement violates any of such statutes or that the compensation hereunder exceeds reasonable compensation, then the parties hereto agree to take such actions as necessary to amend this Agreement to comply with the applicable statutes or regulations, as provided herein.

G. Confidentiality. Contractor acknowledges and agrees that this Agreement is confidential. Contractor will not disclose this Agreement or its terms to any third parties except as necessary to obtain advice and counseling from attorneys, accountants or financial advisors or as may otherwise be required through legal process.

H. Counterparts. This Agreement may be signed by the parties in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. Any signatures on behalf of Facility required in this Agreement or written approval required hereunder may be electronic signatures in accordance with law.

I. Other Agreements. The following list and/or Referral Source Contract Control Log maintained by the Facility constitutes a list of all services furnished by the physician (or an immediate family member of the physician) to the entity as of the date of this Agreement.

| Name | Relationship to Phys | Desc of Contract | Start of Term | End of Term |
|------|---------------------|------------------|---------------|-------------|
|      |                     |                  |               |             |
|      |                     |                  |               |             |
|      |                     |                  |               |             |
|      |                     |                  |               |             |

J. Alternative Dispute Resolution. Any dispute arising out of this Agreement will be resolved through binding arbitration under the rules of the American Arbitration Association. To the extent permitted by law, the Parties hereby jointly and severally

waive any and all right to trial by jury in any action or proceeding arising out of or relating to this Agreement, or the obligations hereunder. The Parties each represent to the other that this Waiver is knowingly, willingly and voluntarily given.

K. Contractor represents and warrants that Contractor shall provide all Services to be performed under this Agreement, and Contractor shall not assign or subcontract any of Contractor's obligations hereunder.

**PER FACILITY POLICY LL.001, GENERAL STATEMENTS ON AGREEMENTS WITH REFERRAL SOURCES, APPROVAL PROCESS, ET.SEQ., PAYMENTS PURSUANT TO THIS AGREEMENT, IF ANY, WILL BE MADE ONLY FOR SERVICES PERFORMED AFTER THE AGREEMENT HAS BEEN SIGNED BY BOTH THE CONTRACTOR AND THE FACILITY UNLESS OTHERWISE APPROVED BY FACILITY'S LEGAL OPERATIONS COUNSEL. SERVICES PERFORMED PRIOR TO THIS DATE WILL NOT BE COMPENSATED, UNLESS OTHERWISE APPROVED BY FACILITY'S LEGAL OPERATIONS COUNSEL.**

Facility and Contractor have executed this Agreement as of the dates beneath their respective signatures.

**CONTRACTOR:**

Miami Neurological Institute, LLC

By: _[signature]_
Title: COO
Date: 8/25/15

**FACILITY:**

Kendall Healthcare Group, Ltd. d/b/a Kendall Regional Medical Center

By: /S/Scott Cihak
    Facility Chief Executive Officer

Date: August 25, 2015

Page 6 of 8

PROFESSIONAL SERVICES AGREEMENT
EMERGENCY INDIGENT CARE COVERAGE ADDENDUM (HCA-607 12/2013)
CONTRACT KEND-95074, SUPPLEMENT 1

This Addendum is attached to, made a part of and executed simultaneously with that certain Professional Services Agreement between the undersigned.

A. Except as provided in this Addendum, neither Facility nor Contractor shall charge the other for services to patients provided pursuant to this Agreement.

B. Facility and Contractor shall make their own independent charges for services to patients, and each shall independently bill and collect the charges due to them. For their mutual assistance in billing and collecting these charges, they agree that Contractor shall, upon reasonable request of Facility for billing purposes, file with Facility reports of all professional and hospital services provided to patients by the Contractor; and Facility shall provide Contractor a daily list of admission and discharges for the Service and with any other information necessary for billing by Contractor that Facility may obtain concerning such patient. Upon request of Facility, Contractor shall provide a schedule of fees representing Contractor's full compensation for professional services rendered by Contractor to patients. Such schedule must, at all times, comply with all applicable laws, rules, regulations, and contractual arrangements with third party payors. The fees set out therein and any change thereto, must, at all times, be reasonable and competitive.

C. Facility requires the Service to be provided to ensure effective, continuous patient care at Facility's emergency department, particularly for patients who may be indigent including consultations for patients arising out of emergency department admissions. Payments to Contractor shall not exceed 100% of the amounts set forth in the prevailing Medicare Rates at the date of service and will be paid according to the prevailing Medicare payment guidelines (the "Indigent Care Rate") in accordance with Facility's policies and procedures. Payment shall be made after Facility has received adequate documentation demonstrating that good faith efforts were made by Contractor for a period of at least sixty (60) days to bill and collect payment from all potential payers, including the patient. If Contractor is paid less than the Indigent Care Rate during to the 60 day period, Facility shall remit to Contractor the difference between what was paid and the Indigent Care Rate. However, under no circumstances will Facility pay Contractor any amount if the patient qualifies for Medicaid or the State Medicaid equivalent program. Contractor must submit claims on the CMS 1500 form and include any documentation required by the Facility. If, after receiving payment from Facility for patient services under this Section C, Contractor receives any payment from the patient or any third party for the patient services, Contractor will promptly pay Facility the amount of such payment up to the amount paid by Facility to Contractor. In addition, should Facility receive notice that Contractor received payment from the patient or any third party, Facility may offset such amounts from any future payments that may be due Contractor under this Agreement. Contractor agrees to undertake all reasonable billing and collection efforts for each patient up until such time that Facility determines that a patient qualifies as indigent.

D. For purposes of this Agreement, a patient shall be considered indigent if Facility determines that:

  i. There is no availability of third party coverage through employment, liability insurance or any federal health care program;

  ii. The patient is not qualified for Medicaid or the State Medicaid equivalent program; and

  iii. There is no ability to make an initial deposit and/or monthly payments (as determined by an assessment of financial resources).

IN WITNESS WHEREOF, Facility and Contractor have duly executed this Addendum as of the dates set out beneath their respective signatures.

**PER FACILITY POLICY LL.001, GENERAL STATEMENTS ON AGREEMENTS WITH REFERRAL SOURCES, APPROVAL PROCESS, ET.SEQ., PAYMENTS PURSUANT TO THIS AGREEMENT, IF ANY, WILL BE MADE ONLY FOR SERVICES PERFORMED AFTER THE AGREEMENT HAS BEEN SIGNED BY BOTH THE CONTRACTOR AND THE FACILITY. UNLESS OTHERWISE APPROVED BY FACILITY'S LEGAL OPERATIONS COUNSEL. SERVICES PERFORMED PRIOR TO THIS DATE WILL NOT BE COMPENSATED, UNLESS OTHERWISE APPROVED BY FACILITY'S LEGAL OPERATIONS COUNSEL.**

CONTRACTOR:

Miami Neurological Institute, LLC

By: _Juan Kelson Rauag_
Title: _CFO_
Dated: _8/25/15_

**FACILITY:**

Kendall Healthcare Group, Ltd. d/b/a Kendall Regional Medical Center

By:  /S/Scott Cihak
     Facility Chief Executive Officer

Dated:  August 25, 2015